**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SIERRA HERNANDEZ,                    ) No. CV 14-2401-AS
                                     )
                Plaintiff,           ) **MEMORANDUM OPINION AND ORDER OF**
        v.                           ) **REMAND**
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of the           )
Social Security Administration,      )
                                     )
                Defendant.           )
_____)

**PROCEEDINGS**

On March 28, 2014, Plaintiff Sierra Hernandez filed a Complaint seeking review of the denial of her application for supplemental security income ("SSI"). (Docket Entry No. 3.) On April 9, 2014, Plaintiff consented to proceed before a United States Magistrate Judge. (Docket Entry No. 8.) Defendant consented on May 5, 2014. (Docket Entry No. 10.) Defendant subsequently filed an Answer to the Complaint and the Administrative Record ("A.R.") on August 11, 2014. (Docket Entry Nos. 13, 14.) The parties then filed a Joint

1

Stipulation ("Joint Stip.") on October 14, 2014, setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 15.) The Court has taken this matter under submission without oral argument, and it is now before the Court for decision. See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 25, 2010, Plaintiff filed an application for SSI, alleging disability beginning December 1, 2004. (A.R. 125-29.) Plaintiff alleges disability after being diagnosed with Huntington's disease and mild scoliosis. (A.R. 16-19.) Plaintiff was 19 years old at the time she filed her application. (A.R. 125.)

Plaintiff's SSI claim was denied at the initial and reconsideration levels. (A.R. 52-56.) On September 30, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 69-74.) The ALJ, Eric V. Benham, held a hearing on August 21, 2011. (A.R. 25-45.) Plaintiff and her mother, Gail Fountain, appeared and testified at the hearing via video conference. (A.R. 14, 25-45.) Vocational expert ("VE") Randi Landford-Hetrick also testified at the hearing. (A.R. 25-45.)

The ALJ issued an unfavorable decision on September 21, 2012. (A.R. 14-21.) The ALJ found that Plaintiff had severe impairments, consisting of scoliosis of the back and Huntington's disease, but the Huntington's disease was asymptomatic. (A.R. 16.) The ALJ then

determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. (Id.)  The ALJ articulated additional limitations as follows:

> occasional difficulty getting along with co-workers, supervisors or the public; is not preclude [sic] from a normal workday or workweek; has some difficulty with memory and carrying out detailed work instructions; has some difficulty with punctuality but would not be absent from work for more than 1 day of work per month.

(A.R. 16–17.)

In determining Plaintiff's RFC, the ALJ rejected Plaintiff's testimony and her mother's testimony concerning her subjective symptoms. (A.R. 17–19.)  The ALJ's adverse credibility finding was based on a lack of corroborating objective medical evidence, a lack of consistent medical treatment, and the ALJ's own observations of Plaintiff at the hearing. (Id.)

Plaintiff has no past relevant work experience, so after determining her RFC, the ALJ considered whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 20.)  The ALJ answered this inquiry affirmatively by relying on the testimony of the VE, who testified that based on Plaintiff's age, education, work experience, and RFC, she could perform the work of a cleaner/housekeeper (DOT No. 323.687-014), a vending machine operator (DOT No. 319.464-014), or a shoe packer/hand packager (DOT No. 920.687.100). (A.R. 20, 40–44.)  Accordingly, the

3

ALJ found that Plaintiff had not been disabled since the date of her application for SSI benefits.  (A.R. 20.)

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision on November 12, 2012.  (A.R. 10.)  Her request was denied on January 23, 2014.  (A.R. 1-3.)  The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. § 405(g); 1383(c).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in rejecting the testimony of her subjective symptoms by failing to provide specific, clear and convincing reasons supported by substantial evidence in the record. (Joint Stip. 2.)

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1196 (9th Cir. 2004).

## APPLICABLE LAW

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  <u>Id.</u> § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." <u>Id.</u> §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities.  <u>See</u>

id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (holding that the ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years

prior to the disability onset date.   If the ALJ finds that the claimant cannot perform her past relevant work or does not have any past relevant work, the ALJ proceeds to step five to determine whether — taking into account the claimant's age, education, work experience, and RFC — there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy.   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).   The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.   <u>Tackett</u>, 180 F.3d at 1098.

### DISCUSSION

After consideration of the record as a whole, the Court finds that the ALJ's findings are *not* supported by substantial evidence or free from material legal error.[1]   For the reasons discussed below, the case is remanded under sentence four of 42 U.S.C. § 405(g).

**A.    <u>The ALJ Erred in Evaluating Plaintiff's Credibility</u>**

While the ALJ found that Plaintiff's medically determinable impairments — Huntington's disease and scoliosis — could reasonably be expected to cause Plaintiff's alleged symptoms, the ALJ determined

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible. (A.R. 18.) Of particular importance to this Court's review is the ALJ's finding that Plaintiff was "essentially asymptomatic" with respect to her Huntington's disease. (Id.) The ALJ's credibility assessment was based on a lack of corroborating objective medical evidence, Plaintiff's conservative treatment, and his own observations of Plaintiff at the hearing. (A.R. 18-19.)

Plaintiff argues that the ALJ failed to identify valid reasons for rejecting her and her mother's testimony about her symptoms, emphasizing the testimony related to her Huntington's disease. (Joint Stip. 4-9.) As set forth below, the Court agrees that the ALJ failed to state legally sufficient reasons for his adverse credibility finding on the symptoms of Plaintiff's Huntington's disease. The Court finds that the ALJ's credibility assessment regarding the symptoms of Plaintiff's scoliosis is supported by substantial evidence.

1. <u>Legal Standard</u>

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." <u>See</u> <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for

the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."
Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating a claimant's subjective symptom testimony, the ALJ
engages in a two-step analysis.   Lingenfelter v. Astrue, 504 F.3d
1028, 1035-36 (9th Cir. 2007).   "First, the ALJ must determine
whether the claimant has presented objective medical evidence of an
underlying medical impairment which could reasonably be expected to
produce the pain or other symptoms alleged."   Id. at 1036 (internal
quotations and citation omitted).   If such objective medical evidence
exists, the ALJ may not reject the claimant's testimony "simply
because there is no showing that the impairment can reasonably
produce the *degree* of symptom alleged."   Smolen, 80 F.3d at 1282
(emphasis in original).   Instead, in finding the claimant's
subjective complaints not credible, the ALJ must make "specific,
cogent" findings that support the conclusion.   Lester v. Chater,
81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan,
903 F.2d 1229, 1231 (9th Cir. 1990)).   Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."   Lester, 81 F.3d at 834.

2.   Objective Medical Evidence

Plaintiff argues that the ALJ improperly relied on objective
medical evidence to discount her and her mother's testimony about her
symptoms.   (See Joint Stip. 4-6.)   Plaintiff points out that she is
not required to produce objective medical evidence of the severity of

9

her symptoms.  <u>Smolen</u>, 80 F.3d at 1282 (holding that a claimant need only show that her impairment "could reasonably have caused some degree of the symptom").  Moreover, a lack of corroborating medical evidence cannot form the sole basis for discounting her testimony regarding the severity of her symptoms.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (holding that a lack of medical evidence may only be a factor in an ALJ's credibility analysis).  Although the ALJ found that Plaintiff's testimony was "generally consistent" with the RFC limitations, Plaintiff argues that her testimony was not at all consistent.  (Joint Stip. 4.)

The ALJ cited an absence of objective medical evidence in giving "minimal weight" to the testimony from Plaintiff and her mother about "the frequency, severity, and duration of her Huntington's disease, tremors, back pain, depression, decreased memory, and cognitive slowing." (A.R. 18.)  To support this conclusion, the ALJ discussed at length the medical evidence from Dr. John Sedgh — an internal medicine doctor who performed a consultative evaluation — and a State Agency medical consultant.  (A.R. 18–19.)  However, the ALJ's discussion of this medical evidence was mostly limited to the physical symptoms presented by Plaintiff, as opposed to mental or behavioral symptoms.

For example, as described by the ALJ, Dr. Sedgh and the State Agency medical consultant opined that Plaintiff had a limited range of motion of the back, but could still lift and carry 10 pounds

frequently and 20 pounds occasionally.[2]   (A.R. 18–19, 194–98, 214–21.)  This medical evidence, as described by the ALJ, constitutes a specific, clear and convincing reason for rejecting Plaintiff's testimony about the severity and limitations of her back pain.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the opinions of examining doctors and medical experts can serve "as substantial evidence supporting the ALJ's findings with respect to [the claimant's] physical impairment and exertional limitations").  But neither doctor addresses the severity or significance of Plaintiff's alleged mental-health and behavioral problems; thus, the evidence does little to discredit the testimony from Plaintiff and her mother about Plaintiff's mental and behavioral health symptoms.  (See A.R. 29–40.)

At the hearing, Plaintiff testified to having trouble with her memory, having difficulty speaking to people, feeling withdrawn, and being clumsy.  (A.R. 29–30.)  Plaintiff's mother testified that her daughter will "fly into a sudden rage" two to four times a day.  (A.R. 35–36.)  Plaintiff also sleeps into the late afternoon and is generally apathetic.  (A.R. 35.)  Plaintiff bolsters her and her mother's testimony with reference to medical reports from UCLA Medical Center from 2006 to 2008.  (See Joint Stip. 3; A.R. 225–38.)  The 2006 Direct DNA Test for Huntington Disease Mutations ("the DNA Test") indicates "Clinical Diagnosis: Symptomatic."  (A.R. 226.)

---

[2]   The State Agency medical consultant first assessed that Plaintiff could perform medium work, but as the ALJ pointed out, that assessment was later adjusted to light work.  (See A.R. 19.)

11

Moreover, also contained in the record are summaries of Plaintiff's visits to Dr. Yvette Bordelon at UCLA between 2006 and 2008. (A.R. 229-38.) In the summaries, Dr. Bordelon discusses Plaintiff's Huntington's disease, clearly indicating her conclusion that Plaintiff's behavioral problems may be attributable to Huntington's disease. (Id.)

The Court finds that the ALJ erred in failing to specifically address the alleged severity of these behavioral symptoms, and instead, formed conclusions about Plaintiff's Huntington's disease that are unsupported by the record. The ALJ found as follows:

> It is noted that Huntington's disease is a fatal condition but usually does not begin to affect the nervous system until ages 35 to 50. However, the claimant is only 21 years old. Moreover, the only symptom evident when examined by the consultative examiner was a slight tremor of the hands. In addition, her neurological examination was normal. Exh. 3F. The claimant was essentially asymptomatic at this time and the undersigned finds no functional limitations due to this genetic condition.

(A.R. 18.)

The ALJ does not provide evidentiary support for the medical conclusion that Huntington's disease "usually does not begin to affect the nervous system until ages 35 to 50." (See A.R. 18.) While the ALJ's finding may be true, the Court cannot find evidence from a medical professional in the record to support it. Moreover, the ALJ entirely fails to address the issue of juvenile-onset

Huntington's disease, which is Plaintiff's apparent diagnosis.  (See A.R. 225-38.)

In addition, the ALJ discredited Plaintiff's testimony about symptoms she exhibited of Huntington's disease by questioning the DNA Test.  The ALJ interpreted this document as ambiguous, and stated that it "revealed findings which identified the claimant as either a Huntington disease patient or a presymptomatic carrier."  (A.R. 18.)  In so doing, the Court finds that the ALJ essentially admitted to an inability to interpret the DNA Test.  (See id. ("It was unclear if the claimant is a pre-symptomatic carrier.").)  Therefore, the ALJ erred in using this document to discredit Plaintiff's testimony without the help of a qualified medical professional to explain the meaning of the DNA Test.

Webster's New World Medical Dictionary defines Huntington's disease as,

> a genetic degenerative disorder of the brain cells characterized by mental and physical deterioration that leads to death.  Abbreviated HD.  Although HD is usually an adult-onset disorder, it can affect children as well.  The average survival time is 15 to 18 years after the onset of symptoms.  Mood disturbance is usually the first symptom seen, with bipolar disorder-like mood swings that may include mania, depression, extreme irritability or angry outbursts and psychosis. . . .

WEBSTER'S NEW WORLD MEDICAL DICTIONARY 204 (3d ed. 2008).  Plaintiff and her mother testified at length about her behavioral problems, which could

reasonably be interpreted as the first symptom of Huntington's disease. (See A.R. 29-40.) Dr. Bordelon — Plaintiff's treating doctor at UCLA Medical Center — appeared to consider her behavior a symptom as far back as 2006. (A.R. 229-38.) Yet the ALJ, in issuing his unfavorable decision, made no specific findings with regard to this alleged symptom or its severity and provided no additional detail as to why he discredited Plaintiff's, or her mother's, testimony about behavioral problems. The ALJ made a passing reference to Dr. Sedgh's consultative examination, noting that the "neurological examination was normal." (A.R. 18, 197-98.) However, Dr. Sedgh's short, cursory evaluation appears limited to testing her physical responses to stimuli and does not discuss mental-health or behavioral problems. (See A.R. 197-98.)

The Court finds that the ALJ's reliance on the objective medical evidence in this case was not a clear and convincing reason for discounting Plaintiff's credibility with respect to the severity of her symptoms of Huntington's disease. Thus, the ALJ erred in failing to provide reasons for his adverse credibility findings and failing to develop the evidentiary record. Moreover, while the ALJ did cite an overall lack of corroborating objective medical evidence with respect to all of Plaintiff's alleged symptoms, the absence of corroborating objective medical evidence cannot be the sole reason for discrediting Plaintiff's testimony. See Burch, 400 F.3d at 681. As discussed below, because the Court finds the other reasons given for discounting Plaintiff's credibility are also legally insufficient, the matter must be remanded.

3.    <u>Conservative Treatment</u>

The ALJ noted the "lack of consistent medical treatment" as another reason to discount Plaintiff's testimony regarding her subjective symptoms. (A.R. 18.)  The ALJ specifically pointed to "only two progress notes" from 2010 relating to abdominal and spinal pain, and Plaintiff's "conservative course of treatment" to treat her back pain and scoliosis. (A.R. 18, 184–89.)  The ALJ did not make explicit or specific findings as to Plaintiff's treatment, or lack of treatment, for Huntington's disease.

"[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotations and citation omitted).  Thus, according to Defendant, the ALJ properly relied on the absence of evidence that Plaintiff is seeking regular treatment for Huntington's disease. (Joint Stip. 12.)  However, Plaintiff argues that the ALJ's conservative-treatment reasoning is legally insufficient because there is no treatment for Huntington's disease until the disease is in its late stages and her mother testified to multiple failed attempts at getting mental-health treatment. (Joint Stip. 7.)

The Court finds that the ALJ's reliance on a lack of treatment to discredit the alleged severity of Plaintiff's symptoms is legally

/ / /

/ / /

15

insufficient with respect to Plaintiff's Huntington's disease.[3]  The ALJ's findings lack the requisite specificity and the evidentiary record is undeveloped regarding Plaintiff's treatment for Huntington's disease.  The testimony of Plaintiff's mother is the only evidence of a course of treatment for Huntington's disease. (See A.R. 34.)  If in fact there is no treatment for Huntington's disease, as Plaintiff's mother testified, then a lack of treatment can hardly serve as a valid basis for discrediting Plaintiff's testimony of her symptoms.

In addition, Plaintiff's mother also testified that Plaintiff tried "about six times" to get psychiatric help at the county mental health center, but kept getting turned away.  (A.R. 34-35.) Plaintiff's repeated attempts at psychiatric treatment do not constitute "a lack of consistent treatment" or "conservative treatment."  See Regenitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

---

[3] To the extent that Plaintiff challenges the ALJ's conservative-treatment reasoning as to the severity of her pain and scoliosis symptoms, the Court is satisfied that the ALJ stated legally sufficient reasons for rejecting Plaintiff's testimony regarding the severity and disabling effects of her scoliosis symptoms.  The ALJ made specific findings, referencing the two progress reports from 2010 as well as the conservative course of medications that Plaintiff was taking to manage her pain symptoms. (See A.R. 18.)

Accordingly, the Court finds that the ALJ's reliance on Plaintiff's lack of treatment for Huntington's disease was neither a specific nor clear and convincing reason for rejecting testimony about Plaintiff's symptoms.

4.   The ALJ's Observations at the Hearing

The ALJ also discredited Plaintiff's testimony based on his personal observations at the hearing. (A.R. 19.) The ALJ noted that "her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations." (Id.)

The Ninth Circuit has repeatedly condemned so-called "sit and squirm" jurisprudence. Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("Denial of benefits cannot be based on the ALJ's observation of [the claimant], when [the claimant's] statements . . . are supported by objective evidence."). But inclusion of an ALJ's personal observations does not necessarily render the decision improper. See Verdugo v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1989).

Here, the ALJ's personal observations of Plaintiff are troubling. Plaintiff and her mother appeared at the hearing via video conference. (A.R. 14.) Yet in describing Plaintiff's demeanor, the ALJ stated "she was able to enter and exit the hearing room without much difficulty." (A.R. 19.) The ALJ also noted that Plaintiff was able to "answer questions quite thoroughly and clearly." (Id.) The hearing transcript, however, tells another

17

story.   Plaintiff had difficulty explaining herself and her symptoms throughout her testimony, and she ultimately turned the testimony over to her mother.   (See A.R. 32 ("You know, my mom could tell you a lot better than I can, my mom, my mom could tell you a lot better than I can.").)   The Court finds that the ALJ's personal observations were not supported by substantial evidence and therefore do not constitute a clear and convincing reason for discounting Plaintiff's symptom testimony.

**B.   <u>Remand is Appropriate</u>**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

When the credibility of a claimant's subjective-symptom testimony is at issue, the Ninth Circuit has developed a three-part standard.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019 (9th Cir. July 14, 2014).   Courts should credit as true the claimant's testimony and remand for an immediate award of benefits only where,

> (1) the record has been fully developed and
> further administrative proceedings would serve no
> useful purpose; (2) the ALJ has failed to provide
> legally sufficient reasons for rejecting evidence
> . . . ; and (3) if the improperly discredited
> evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

Id. However, where, as here, the circumstances of the case suggest that further administrative review could remedy the ALJ's errors or "the record as a whole creates serious doubt that a claimant is, in fact, disabled," remand is appropriate. Id. at 1021; see also McLeod, 640 F.3d at 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

The Court has determined that the ALJ erred in rejecting Plaintiff's credibility based on the objective medical evidence and lack of treatment for Plaintiff's Huntington's disease. The reasons provided by the ALJ lacked specificity and suffered from an undeveloped evidentiary record. On remand, the ALJ should reassess Plaintiff's RFC after revisiting his credibility determination on the limiting effects of Plaintiff's Huntington's disease symptoms, specifically the limitations posed by her alleged mental-health and behavioral problems.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19

**CONCLUSION**


For the reasons discussed above, this matter is remanded for further administrative action consistent with this Opinion.


LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: December 29, 2014.

                                   _/s/_____
                                   ALKA SAGAR
                                   UNITED STATES MAGISTRATE JUDGE